# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SAFE SKIES CLEAN WATER WISCONSIN, INC, | ) ) ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) | Civil Case No. 21-634 (CKK) |
| UNITED STATES AIR FORCE, *et al*., | ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 2

STANDARD OF REVIEW ........................................................................................... 3

ARGUMENT ................................................................................................................. 4

      I.      Plaintiff Has Failed to Overcome the Presumption of Regularity by
            Identifying Documents That Were Improperly Excluded From the
            Administrative Record ........................................................................ 4

           A.     Plaintiff Has Failed to Identify any Specific Document that Pre-
                 Dates 2017 That Should Have Been Included in the Record ..................... 6

           B.     The Redacted Portions of the Documents Plaintiff Identified are
                 Irrelevant or Protected by the Deliberative Process Privilege ................... 7

           C.     Defendants Properly Asserted the Deliberative Process Privilege
                 Over Communications Between the Agencies and the FAA
                 Regarding the Draft EIS ........................................................................ 10

      II.     Request to Submit Extra-Record Evidence for the Court to Consider
            Should be Denied ................................................................................ 14

CONCLUSION ............................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Am. Petroleum Tankers Parent LLC v. United States*,
952 F. Supp. 2d 252 (D.D.C. 2013) ................................................................. 7, 9, 11

*Am. Wildlands v. Kempthorne*,
530 F.3d 991 (D.C. Cir. 2008) .................................................................... 16

*Amfac Resorts v. U.S. Dep't of Interior*,
143 F. Supp. 2d 7 (D.D.C. 2001) ............................................................ 11, 16

*Animal Legal Def. Fund v. Vilsack*,
110 F. Supp. 3d 157 (D.D.C. 2015) ............................................................ 16

*Axiom Res. Mgmt., Inc. v. United States*,
564 F.3d 1374 (Fed. Cir. 2009) .................................................................. 15

*Banner Health v. Burwell*,
126 F. Supp. 3d 28 (D.D.C. 2015) .............................................................. 17

*Banner Health v. Price*,
867 F.3d 1323 (D.C. Cir. 2017) ................................................................. 17

*Bar MK Ranches v. Yuetter*,
994 F.2d 735 (10th Cir. 1993) ................................................................. 4-5

*Butte Cnty., Cal. v. Chaudhuri*,
887 F.3d 501 (D.C. Cir. 2018) .................................................................. 17

*Camp v. Pitts*,
411 U.S. 138 (1973) ............................................................................. 3

*Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior*,
667 F. Supp. 2d 111 (D.D.C. 2009) ...................................................... 4, 15-18

*Chem. Weapons Working Grp. v. U.S. Dep't of Def.*,
655 F. Supp. 2d 18 (D.D.C. 2009) .............................................................. 16

*Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Homeland Sec.*,
514 F. Supp. 2d 36 (D.D.C. 2007) .............................................................. 12

*City of Dania Beach v. Fed. Aviation Admin*,
628 F.3d 581 (D.C. Cir. 2010) ................................................................... 6

*Coastal States Gas Corp. v. Dep't of Energy*,
617 F.2d 854 (D.C. Cir. 1980) .................................................................. 11

*CTS Corp. v. E.P.A.*,
759 F.3d 52 (D.C. Cir. 2014) ................................................................... 16

*Dept. of Interior v. Klamath Water Users Protective Ass'n*,
    532 U.S. 1 (2001) ............................................................................................... 12-13

*Earthworks v. U.S. Dep't of the Interior*,
    279 F.R.D. 180 (D.D.C. 2012) ................................................................................ 4-5

*Esch v. Yeutter*,
    876 F.2d 976 (D.C. Cir. 1989) .................................................................................. 14

*Franks v. Salazar*,
    751 F. Supp. 2d 62 (D.D.C. 2010) ............................................................................ 19

*Fund for Animals v. Williams*,
    245 F. Supp. 2d 49 (D.D.C. 2003) ........................................................................... 4-5

*Fund for Animals v. Williams*,
    391 F. Supp. 2d 191 (D.D.C. 2005) ............................................................................ 3

*Hill Dermaceuticals, Inc. v. Food & Drug Admin.*,
    709 F.3d 44 (D.C. Cir. 2013) .................................................................................... 15

*In re Sealed Case*,
    121 F.3d 729 (D.C. Cir. 1997) ................................................................................... 7

*In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*,
    156 F.3d 1279 (D.C. Cir. 1998) ............................................................................ 8, 10

*Jud. Watch of Fla., Inc. v. Dep't of Justice*,
    102 F. Supp. 2d 6 (D.D.C. 2000) ............................................................................. 11

*Jud. Watch, Inc. v. Dep't of Justice*,
    365 F.3d 1108 (D.C. Cir. 2004) ................................................................................ 13

*Jud. Watch, Inc. v. FDA*,
    449 F.3d 141 (D.C. Cir. 2006) .................................................................................. 11

*N.Y. Rehab. Care Mgmt., LLC v. N.L.R.B.*,
    506 F.3d 1070 (D.C. Cir. 2007) ................................................................................ 15

*Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health & Hum. Servs.*,
    631 F. Supp. 2d 23 (D.D.C. 2009) .......................................................................... 5, 8

*Nat'l Mining Ass'n v. Jackson*,
    856 F. Supp. 2d 150 (D.D.C. 2012) ........................................................................... 4

*Oceana, Inc. v. Pritzker*,
    217 F. Supp. 3d (D.D.C. 2016) ............................................................................ 8-9, 13

*Oceana, Inc. v. Ross*,
    290 F. Supp. 3d 73 (D.D.C. 2018) ........................................................................ 5, 7-8

*Oceana, Inc. v. Ross*,
    920 F.3d 855 (D.C. Cir. 2019) .............................................................................. 4, 10

*San Luis Obispo Mothers for Peace v. U.S. Nuclear Regul. Comm'n*,
   789 F.2d 26 (D.C. Cir. 1986) ................................................................. 13

*Silver State Land, LLC v. Beaudreau*,
   59 F. Supp. 3d 158 (D.D.C. 2014) ......................................................... 18

*Taylor Energy Co. LLC v. United States by & through U.S. Coast Guard Nat'l Pollution Funds Ctr.*,
   No. 20-1086, 2021 WL 538052 (D.D.C. Feb. 15, 2021) ..................... 5-6, 8

*Theodore Roosevelt Conservation P'ship v. Salazar*,
   616 F.3d 497 (D.C. Cir. 2010) .......................................................... 16, 19

*UnitedHealthcare Ins. Co. v. Azar*,
   316 F. Supp. 3d 339 (D.D.C. 2018) ....................................................... 13

**Statutes**

5 U.S.C. § 706 ........................................................................................... 3

**Regulations**

40 C.F.R. § 1501.6 ................................................................................... 12

**Other Authorities**

83 Fed. Reg. 5408 ...................................................................................... 2

84 Fed. Reg. 39296 .................................................................................... 3

85 Fed. Reg. 11986 .................................................................................... 3

iv

**INTRODUCTION**

Defendants[1] certified an Administrative Record ("AR" or "record") of over 72,000 pages

detailing the Air Force and National Guard Bureau's (collectively, "the Agencies") selection of

the 115th Fighter Wing ("115 FW") Installation at Dane County Regional Airport, Madison,

Wisconsin (also known as "Truax Field") for locating F-35A aircraft as part of the F-35A

Operation Beddown.  *See* ECF No. 19-2 (AR index).  That record details Defendants' review of

the selection of the 115 FW under the National Environmental Policy Act ("NEPA"), and

constitutes the record for the Record of Decision ("ROD") signed on April 14, 2020 and

accompanying final Environmental Impact Statement ("final EIS").

Despite that comprehensive record, Plaintiff Safe Skies Clean Air Wisconsin, Inc.

requests that the Court both supplement the AR with additional documents it believes should

have been included, as well as consider extra-record materials that Plaintiff alleges would aid

this Court's review of the merits.  *See* Pls.' Mot. to Supp. AR (ECF No. 20).  Plaintiff's requests,

however, are contrary to the demanding standards for determining when it is proper to

supplement an agency's record or for a court to consider materials outside the record, and should

therefore be denied.

In particular, preparation of an administrative record is entitled to a presumption of

regularity, and Plaintiff fails to rebut that presumption by demonstrating that the Agencies failed

to include in the record materials they relied on, or that the record is otherwise incomplete.

Instead, Plaintiff takes issue with redactions made by Defendants to remove irrelevant or

---

[1]      Defendants are the United States Air Force, Frank Kendall, Secretary of the Air Force, National Guard Bureau, and General Daniel R. Hokanson, Chief, National Guard Bureau.

deliberative materials, and otherwise questions, without any evidentiary basis, the sufficiency of the materials included in the record.  But each concern is belied by Defendants' rationale.

Plaintiff's request to submit extra-record materials runs afoul of many of the same principles.  Rather than demonstrate that the materials fall into one of the limited exceptions articulated by the D.C. Circuit for consideration of extra-record materials, Plaintiff instead argues that the materials should be admitted under a broad, and now-discarded, standard simply because the materials are likely to be relevant to Plaintiff's claims in this lawsuit.  That the extra-record material may relate to the subject matter of the litigation, however, is not reason enough for the Court to expand its review beyond the record, and Plaintiff otherwise fails to demonstrate that the AR compiled and certified by Defendants is so lacking that consideration of additional materials is necessary to facilitate this Court's review.

In sum, Plaintiff fails to show that this Court should either supplement the record or expand its review to include the materials Plaintiff submitted.  The Court should therefore deny Plaintiff's Motion and this case should proceed to briefing on the merits.

## BACKGROUND

Plaintiff challenges Defendants' final EIS and selection of the 115 FW Installation for locating F-35A jets as part of the F-35A Operational Beddown.  *See* Compl. ¶¶ 39-138 (ECF No. 1).

The U.S. Air Force planned to base F-35A aircrafts at two Air National Guard ("ANG") installations around the country, and identified five candidate locations in the final EIS.  AR_05. In December 2017, Truax Field, WI and Dannelly Field, AL were identified as the preferred alternatives for the beddown of the F-35A jets.  AR_114.  On February 7, 2018, a Notice of Intent to prepare an EIS was published in the Federal Register.  83 Fed. Reg. 5408.  Scoping for

the EIS began on February 7, 2018, and the draft EIS was published in the Federal Register on

August 9, 2019.  84 Fed. Reg. 39296.  After a public comment period and public hearings on the

draft EIS, the Notice of Availability for the final EIS was published in the Federal Register on

February 28, 2020, 85 Fed. Reg. 11986, and the ROD was signed on April 14, 2020.   AR_1516-

25.  The installations selected in the ROD following the final EIS were the 115 FW and the 187

Fighter Wing at Montgomery Regional Airport, Montgomery, AL.  AR_1517.  This litigation

concerns only basing of F-35As at Truax Field with the 115 FW.

On March 10, 2021, Plaintiff filed the present action under the Administrative Procedure

Act ("APA") alleging that Defendants' final EIS violates NEPA.  Defendants filed a certified list

of the contents of the AR on August 6, 2021, and supplemented the AR on August 19, 2021.

ECF Nos. 17, 19.  Although the Parties engaged in discussions to informally resolve any disputes

over the contents of the AR, Defendants were not able satisfy all of Plaintiff's requests, and

Plaintiff filed its Motion to Supplement on August 20, 2021.  ECF No. 20.

## STANDARD OF REVIEW

Under Section 706 of the APA, a court reviewing an agency's decision "review[s] the

whole record or those parts of it cited by a party." 5 U.S.C. § 706.  "[T]he focal point for judicial

review should [therefore] be the administrative record already in existence, not some new record

made initially in the reviewing court."  *Camp v. Pitts*, 411 U.S. 138, 142 (1973).  As a result,

"[t]o ensure that the administrative record contains 'neither more nor less' information than was

before the agency," an agency should "collect those materials 'that were compiled by the agency

that were before the agency at the time the decision was made.'"  *Fund for Animals v. Williams*,

391 F. Supp. 2d 191, 196 (D.D.C. 2005).

Although "there are some circumstances where the administrative record needs to be supplemented due to some deficiency, [ ] that is an exceptional occurrence." *Cape Hatteras Access Preservation All. v. U.S. Dep't of Interior*, 667 F. Supp. 2d 111, 113 (D.D.C. 2009). "Because administrative records are presumed complete, motions to supplement the record are granted only in limited circumstances." *Nat'l Mining Ass'n v. Jackson*, 856 F. Supp. 2d 150, 155 (D.D.C. 2012). Similarly, "[i]t is likewise the case that consideration of extra-record evidence in reviewing agency action is extraordinary." *Cape Hatteras*, 667 F. Supp. 2d at 113. "Accordingly, it is only in rare circumstances that a court will consider extra-record evidence in reviewing agency actions." *Nat'l Mining Ass'n*, 856 F. Supp. 2d at 155.

## ARGUMENT

### I.  Plaintiff Has Failed to Overcome the Presumption of Regularity by Identifying Documents That Were Improperly Excluded From the Administrative Record.

Plaintiff asserts that four categories of documents or information were before the Agencies but were improperly omitted from the administrative record:  (1) "documents that led to the decision in 2017 to select Truax;" (2) redacted sections of the document beginning with AR_68766; (3) redacted sections of the document beginning with AR_68772; and (4) "FAA comments stating its reasons for disapproval of the project."  ECF No. 20 at 2.

An agency's designation of the administrative record, however, is entitled to a presumption of regularity.  *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) (quoting *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993)).  The agency establishes what constitutes the full administrative record that was "before the agency at the time of its decision." *Fund for Animals v. Williams*, 245 F. Supp. 2d 49, 56 (D.D.C. 2003), *vacated on other grounds*, 428 F.3d 1059 (D.C. Cir. 2005).  What is deemed "[b]efore the agency" is limited to what the agency directly or indirectly considered.  *Earthworks v. U.S. Dept. of the Interior*, 279 F.R.D.

4

180, 184 (D.D.C. 2012).  This is because "[a] broad application of the phrase 'before the agency' would undermine the value of judicial review:  [I]nterpreting the word 'before' so broadly so as to encompass any potentially relevant document existing within the agency or in the hands of a third party would render judicial review meaningless."  *Id.* (quoting *Fund for Animals*, 245 F. Supp. 2d at 57 n.7) (internal quotation marks omitted).

> In addition, the presumption of regularity is supported by strong practical considerations:
>
> It is the agency that did the "considering," and that therefore is in a position to indicate initially which of the materials were "before" it – namely, were "directly or indirectly considered."  If it were otherwise, non-agency parties would be free to define the administrative record based on the materials they believe the agency must (or should) have considered, leaving to the court the unenviable task of sorting through a tangle of competing "records" in an attempt to divine which materials were considered.  Judges are not historians charged with isolating the 'true' basis for an agency's decision when its ostensible justification proves unconvincing. . . . Hence the presumption that the agency properly designated the administrative record.

*Fund for Animals*, 245 F. Supp. 2d at 57 (internal quotation marks omitted).

As such, courts presume an administrative record is complete unless a plaintiff overcomes this presumption with "clear evidence to the contrary."  *Id.* at 55 (citing *Bar MK Ranches*, 994 F.2d at 739-40); *see also National Ass'n of Chain Drug Stores v. U.S. Dept. of Health & Human Servs.*, 631 F. Supp. 2d 23, 28 (D.D.C. 2009) ("To overcome the assumption that the agency properly designated the record, a party must make a 'significant showing' that the agency has acted in bad faith.").  A plaintiff must therefore:  (1) identify omitted documents with specificity; and (2) present non-speculative, concrete evidence that the omitted documents were directly or indirectly considered by the actual decision makers.  *Taylor Energy Co. LLC v. United States by & through U.S. Coast Guard Nat'l Pollution Funds Ctr.*, No. 20-1086, 2021 WL 538052, at *2 (D.D.C. Feb. 15, 2021); *Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 84-85 (D.D.C. 2018).

Here, Plaintiff has offered no credible, non-speculative argument for why the record is incomplete.  Nor has Plaintiff made the threshold showing of need or presented evidence of bad faith sufficient to overcome the deliberative process privilege the Agencies have asserted over only a handful of documents.  Accordingly, the Court should deny Plaintiff's motion to supplement the record.

> ### A.  Plaintiff Has Failed to Identify any Specific Document that Pre-Dates 2017 That Should Have Been Included in the Record.

In its motion, Plaintiff seeks to supplement the record with "documents that led to the decision in 2017 to select Truax."  ECF No. 20 at 2.  But Plaintiff has failed to identify any specific documents that should have been included in the record, and does not present any evidence that documents "dated before 2017" were even considered by the Agencies but not included.  *Id.*   The Court should therefore deny Plaintiff's vague request to supplement the record.

 In particular, Plaintiff has failed to meet its burden of identifying what materials were omitted from the record. [2]  *Taylor Energy*, 2021 WL 538052 at *5 ("the burden is on [plaintiff] to describe the omitted materials 'with sufficient specificity'").  And Plaintiff has also failed to provide concrete evidence, let alone non-speculative grounds, for the conclusion that any documents "dated before 2017" were excluded from the record but were directly or indirectly considered by Defendants.  Indeed, the certified AR contains all documents concerning the identification of five alternative ANG locations that were considered by the Agencies during the

---

[2]    Even if the Court were to consider Plaintiff's motion to supplement the record with documents "dated before 2017" as a request to introduce extra-record evidence, Plaintiff's motion still fails.  *See City of Dania Beach v. Federal Aviation Admin.*, 628 F.3d 581, 590 (D.C. Cir. 2010) (determining that plaintiff's general request to include materials in the record from prior EIS processes was too vague to qualify for exceptions allowing extra-record evidence, and noting that plaintiff should have identified particular documents for inclusion).

NEPA process, and Plaintiff has offered no evidence to the contrary.  *See* AR_77; *see also* ECF Nos. 17-1; 19-1.  Because Plaintiff has failed to make any showing of evidence necessary to overcome the presumption of regularity — much less the requisite extraordinary circumstances necessary to do so— the Court should deny Plaintiff's request to supplement the record with various unidentified documents.

> **B.    The Redacted Portions of the Documents Plaintiff Identified are Irrelevant or Protected by the Deliberative Process Privilege.**

Plaintiff also demands that Defendants remove redactions on the documents beginning with AR_68766 and AR_68772.  As an initial matter, neither of these documents were withheld in full.  Rather, the agencies only partially redacted the documents, identifying portions that were either:  (1) irrelevant because they do not pertain to this decision; or (2) reflect internal deliberations.  The Agencies then properly disclosed all other information.  Against that, Plaintiff offers no support for its contention that these documents are improperly redacted, and its request should consequently be denied.

The D.C. Circuit has long acknowledged that materials protected by the deliberative process privilege are not part of the administrative record.  *See Oceana*, 290 F. Supp. 3d at 82-83 (citing *Am. Petroleum Tankers Parent, LLC v. United States*, 952 F. Supp. 2d 252, 265 (D.D.C. 2013)).  To fall within the scope of the deliberative process privilege, a document must be predecisional and deliberative. *See id.* at 83 (citing *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997)).  "A document is predecisional 'if it was generated before the adoption of an agency policy' and it is deliberative 'if it reflects the give-and-take of the consultative process.'" *Id.* (quoting *Am. Petroleum*, 952 F. Supp. 2d at 265).

> The rationale for excluding these deliberative process documents from the administrative record is two-fold.   First, the documents are irrelevant to arbitrary and capricious review because "[t]he actual subjective motivation of agency

decisionmakers is immaterial as a matter of law—unless there is a showing of bad faith or improper behavior." *Nat'l Ass'n of Chain Drug Stores v. HHS*, 631 F. Supp. 2d 23, 27 (D.D.C. 2009) (quoting *In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*, 156 F.3d 1279, 1279 (D.C. Cir. 1998)). Second, "protecting internal, deliberative materials helps 'enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government.' " *Oceana,* 290 F. Supp. 3d at 83 (quoting *Oceana*, 217 F. Supp. 3d at 319).

*Taylor Energy*, 2021 WL 538052 at *9.

Particularly relevant here, "where … agency action has been challenged as arbitrary and capricious, predecisional and deliberative materials which have not been included in the administrative record are 'immaterial' absent a showing of bad faith or improper behavior by the agency." *Oceana, Inc. v. Pritzker*, 217 F. Supp. 3d 310, 319 (D.D.C. 2016) (citing *In re Subpoena Duces Tecum*, 156 F.3d at 1279).

The document beginning with bates number AR_68766 is an email with the subject "March 2016 Strategic Basing Monthly Update," and an attached memo.  *See* ECF No. 20-2 at 1-6.  Contrary to Plaintiff's assertions, the entire document does not discuss the "[b]asing criteria for the fifth and sixth F-35A operational locations (ANG)/basing candidates for the seventh F-35A operation location."  ECF No. 20 at 2.  Rather, the unredacted portions of the email state that the purpose of the Strategic Basing Monthly Update was to "Obtain SecAF approval/disapproval of *nine* basing decisions by signing the March 2016 Strategic Monthly Update."  ECF No. 20-2 at 1 (emphasis added).  All non-deliberative discussions related to the fifth and sixth F-35A operation locations basing criteria and F-35A Ops 7 basing candidates were left unredacted, and the document contains several related bullet points identifying criteria and candidates.  *See id*. at 3-4.  On the other hand, the portions of the email and memo addressing the other eight unrelated basing decisions were redacted.  Ex. A, Decl. of Robert E. Moriarty ¶ 8.  In addition, deliberative content related to the fifth and sixth F-35A operational locations has been

redacted.  *Id.* ¶ 7.  Those few deliberative sentences redacted relate to internal recommendations to the Secretary of the Air Force regarding Air Force policy.  *Id.*

Plaintiff also asserts that the document beginning at Bates No. AR_68772 should be unredacted.  The first page of the document is completely unredacted.  ECF No. 20-2 at 7.  The second page of the document, AR_68773, identifies a purpose of "[o]btain[ing] SecAF approval of way ahead for F-35A Ops 5&6 candidate installations."  *Id.* at 8.  The six redacted lines on that page relate to draft Air Force strategy and analysis related to production of the final EIS.  Moriarty Decl. ¶ 9.

These predecisional communications fall squarely under the deliberative process privilege because they consist of recommendations and draft Air Force strategy and analysis.  *Am. Petroleum*, 952 F. Supp. 2d at 265-66 (the privilege protects "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."); *see also Oceana*, 217 F. Supp. 3d at 319-20 (recognizing the privilege aims at protecting communications that allow for "open and frank discussion" among agency decisionmakers and acknowledging officials "will not communicate candidly among themselves if each remark is a potential item of discovery and front page news.").  That, as Plaintiff seems to argue, these documents are dated before 2017 (and thus, Plaintiff claims, are relevant to the Agencies' selection of the 115 FW as one of the preferred alternatives in December 2017) has no bearing on whether the documents were properly withheld subject to the deliberative process privilege.

In sum, none of the redacted content is properly part of the AR.  The information related to the eight other basing decisions in AR_68766 is unrelated to Plaintiff's claims in this case and was not considered by the Agencies in preparing the final EIS.  Nor should the remaining few

redacted sentences in the two documents be a part of the record, given that disclosing this information would reveal the Agencies' deliberative recommendations and analysis in their development of the final EIS. *Oceana*, 920 F.3d at 865 (quoting *In re Subpoena Duces Tecum*, 156 F.3d at 1280) (internal quotation marks omitted) ("predecisional and deliberative documents are not part of the administrative record . . . .").

### C.   Defendants Properly Asserted the Deliberative Process Privilege Over Communications Between the Agencies and the FAA Regarding the Draft EIS.

The Court should also reject Plaintiff's contention that Defendants improperly asserted the deliberative process privilege over "FAA's Comments Stating its Reasons for Disapproval of the Project." ECF No. 20 at 3. Plaintiff's argument mischaracterizes the subject of those communications and fails to articulate any plausible basis for why the privilege should not apply. Instead, Plaintiff simply states it "believes the comments are like other agency comments, such as those filed by the EPA, and must be released." *Id*. This argument lacks merit.

During the Agencies' NEPA process, the FAA was involved in the development of the Draft EIS as a cooperating agency. ECF No. 20-2 at 9-10. The FAA's involvement as a cooperating agency "included reviewing relevant information and analyses, providing comments, and participating in meetings and information sessions." *Id.* at 12. Plaintiff requests that these communications regarding the Draft EIS be included in the administrative record, asserting that the documents are not privileged. ECF No. 20 at 3. Plaintiff's assertion, however, fails for at least three reasons.

*First*, Plaintiff seeks an order that would improperly limit the scope of the deliberative process privilege. The privilege protects "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Am. Petroleum*, 952 F. Supp. 2d at 265-66 (quoting

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).  The fact that those communications relate to concerns expressed by another agency does not eviscerate the privilege where internal communications are implicated.  *See Amfac Resorts, L.L.C. v. U.S. Dep't of Interior*, 143 F. Supp. 2d 7, 13 (D.D.C. 2001) ("deliberative intra-agency memoranda and other such records are ordinarily privileged, and need not be included in the record.").

In other words, "[d]eliberative material" does not depend on whether the views exchanged are intra-agency or inter-agency; rather, whether material is deliberative depends on whether it "reflects the give-and-take of the consultative process."  *Am Petroleum*, 952 F. Supp. 2d at 265 (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006)).  "After all, the purpose of the deliberative privilege is to afford government officials not only the freedom to '*debate* alternative approaches in private,' but also the 'freedom to' deliberate … [a] document is … deliberative when it is 'actually related to the process by which policies are formulated' and decisions are made."  *Judicial Watch of Florida, Inc. v. United States Dept. of Justice*, 102 F. Supp. 2d 6, 14 (D.D.C. 2000) (citation omitted).  The "give-and-take of the consultative process" necessarily includes communications among executive branch agencies to avoid the chilling effect on robust inter-agency debate.  Agencies regularly receive input from other federal entities on statutes and programs that they administer, and these communications, no less than intra-agency communications, should not be made in a fishbowl.  Here, the FAA, Air Force, and NGB communicated regarding the appropriate methodologies and analysis to be included in the Draft EIS, communications that fall squarely within the scope of the deliberative process privilege. Moriarty Decl. ¶ 10.

*Second*, even if the Court concludes that inter-agency communications should be distinguished from intra-agency communications, the deliberative process privilege at the very

least extends to communications between government agencies and consultants.  Intra-agency documents include those communications that have "been received by an agency, to assist it in the performance of its own functions, from a person acting in a governmentally conferred capacity other than on behalf of another agency – *e.g.*, in a capacity as an employee or consultant to the agency."  *Citizens for Responsibility and Ethics in Washington v. U.S. Dept. of Homeland Sec.*, 514 F. Supp. 2d 36, 44 (D.D.C. 2007).  The consultant's documents "play[] essentially the same part in an agency's process of deliberation as documents prepared by agency personnel might have done."  *Dept. of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 10-11 (2001).  The consultant has the same "obligations . . . to truth and its sense of what good judgment calls for," *id.*, and, therefore the privilege serves the same purpose of promoting open and frank discussions as it does with agency employees.

Here, the FAA's communications were part of the Agencies' consultative process.  The FAA became a cooperating agency with the Air Force to participate in the development of the final EIS pursuant to 40 C.F.R. § 1501.6 (2017).  ECF No. 20-2 at 10.  As a cooperating agency, the FAA assisted the Air Force in performing its own functions, including participating in the EIS's scoping process and making staff available to support the NEPA process.  40 C.F.R. §1501.6 (2017).  As the Agencies were developing the Draft EIS, the FAA participated by reviewing working drafts of the Draft EIS and providing feedback on preliminary drafts.  Moriarty Decl. ¶ 10.  As such, far from acting with its own interests in mind, as a cooperating agency the FAA essentially functioned as a consultant of the Air Force.  *Compare Citizens for Responsibility*, 514 F. Supp. 2d at 44 (determining that FEMA properly withheld communications involving a former Congressman since it was part of FEMA's normal information gathering process and nothing indicated an adversarial relationship with the

Congressman) *with Klamath Water Users*, 532 U.S. at 11-13 (determining the tribe did not function as a consultant where it communicated with the agency as a self-advocate with its own interest in mind).  The communications between the Air Force and the FAA are therefore properly withheld under the deliberative process privilege because they include back and forth discussions and epitomize the efforts of the Agencies to explore possibilities and exchange ideas, precisely the sort of communication that the deliberative process privilege was intended to protect.

 **Third**, Plaintiff's request fails because it has not met its burden of making a sufficient showing of need to overcome Defendants' invocation of the privilege.  *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004).  The need determination "tak[es] into account factors such as 'the relevance of the evidence,' 'the availability of other evidence,' 'the seriousness of the litigation,' 'the role of the government,' and the 'possibility of future timidity by government employees.'"  *UnitedHealthcare Insurance Co. v. Azar*, 316 F. Supp. 3d 339, 347-48 (D.D.C. 2018).  Where there is no evidence of bad faith, the D.C. Circuit "has discouraged courts from delving into the internal deliberations of agencies, even to evaluate a claim of privilege."  *Oceana*, 217 F. Supp. 3d at 319 (citing *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*, 789 F.2d 26, 45 (D.C. Cir. 1986)).

 Plaintiff has failed to present any argument regarding Defendants' bad faith.  For that reason alone further evaluation of the communications is unwarranted.  Moreover, Plaintiff's motion is completely silent as to any showing of "need" sufficient to overcome the privilege.  And, against Plaintiff's generalized request, Defendants produced over 72,000 pages of records, communications, and comments that were considered by the Agencies; given that fulsome record Plaintiff does not require access to communications that, if released, would seriously jeopardize

future frank discussion among cooperating agencies as to draft documents.  The Court should reject Plaintiff's request on this ground as well.

## II.   Plaintiff's Request to Submit Extra-Record Evidence for the Court to Consider Should be Denied.

Plaintiff requests that the Court consider an additional 612 pages of material that it claims are relevant to the allegations in its Complaint.  ECF No. 20 at 3.  In particular, Plaintiff alleges that those materials implicate five of the exceptions for consideration of extra-record evidence articulated in *Esch v. Yeutter*:   "(1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; …; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; …; (7) in cases arising under the National Environmental Policy Act; …."  876 F.2d 976, 991 (D.C. Cir. 1989); *see* ECF No. 20 at 4.

Plaintiff specifically requests that the Court consider a variety of documents, ECF No. 20 at 5-7, that fall into four categories:  (1) documents relating to Defendants' analysis in the final EIS of certain man-made per- and polyfluoroalkyl substances used by the Agencies for fire-fighting (referred to throughout as "PFAS"), *id*. at 7-9; (2) documents that "show defendants did not take a hard look at the air pollutants emitted by F-35s and the harm the pollutants cause to human health," *id*. at 9; (3) a document "prov[ing] Defendants "did not adequately consider climate change impacts," *id*. at 9-10; and (4) three documents bearing on "the noise impacts [of] the F-35As."  *Id*. at 10.

As an initial matter, the Court should deny all of Plaintiff's requests because Plaintiff largely fails to specify which exception applies to which category of documents.  *N.Y. Rehab. Care Mgmt., LLC v. N.L.R.B.*, 506 F.3d 1070, 1076 (D.C. Cir. 2007) ("It is not enough merely to

mention a possible argument in the most skeletal way, leaving the court to do counsel's work.")
(citation omitted). Although Plaintiff does note that some categories of materials should be
considered under the fifth *Esch* exception, *see, e.g.*, ECF No. 20 at 9-10, Plaintiff's
memorandum is otherwise largely absent of detail as to whether other exceptions are applicable.
*See* ECF No. 9 (noting only that the second category of documents "show defendants did not
take a hard look at the air pollutants emitted by F-35s"). The Court should decline to parse out
which exception applies to which category of documents or to make Plaintiff's arguments for it.

Moreover, Plaintiff's reliance on *Esch* is misplaced. "*Esch* has been given a limited
interpretation since it was decided, and at most it may be invoked to challenge gross procedural
deficiencies—such as where the administrative record itself is so deficient as to preclude
effective review." *Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 47 (D.C. Cir.
2013); *see also Axiom Resource Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir.
2009) ("*Esch's* vitality even within the D.C. Circuit is questionable in light of more recent
opinions by that court which demonstrate a more restrictive approach to extra-record evidence.")
(citing cases); *Cape Hatteras*, 667 F. Supp. 2d at 115 ("the *Esch* exceptions are generally more
appropriately applied in actions contesting the procedural validity of agency decisions, but even
if they are not so limited, it is clear that they were to be sparingly applied to only those cases
where extra-record evidence was necessary to make judicial review effective.").[3] In fact, this
Court has declined to read *Esch* as broadly as Plaintiff proffers here. *See Animal Legal Defense
Fund v. Vilsack*, 110 F. Supp. 3d 157, 160 n.1 (D.D.C. 2015) (Kollar-Kotelly, J.) (recognizing

---

[3]    Similarly, Plaintiff's citation to *Chemical Weapons* is inapposite, as that case concerns
when a supplemental EIS is required, not when a court may admit extra-record evidence. *See
Chemical Weapons Working Grp. v. U.S. Dep't of Def.*, 655 F. Supp. 2d 18, 23 (D.D.C. 2009).

that exceptions permitting extra-record evidence have been given a "limited interpretation") (citation omitted).[4]

Instead, the D.C. Circuit has clarified that resort to extra-record evidence is "the exception, not the rule," and that admission of extra-record evidence is therefore proper only "when there has been a 'strong showing of bad faith or improper behavior' or when the record is so bare that it prevents effective judicial review." *Theodore Roosevelt Conservation Partnership v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010); *see also American Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008) (recognizing limited exceptions).  Said differently, extra-record evidence may be permitted "where 'the procedural validity of the agency's action remains in serious question,' … or the agency affirmatively excluded relevant evidence." *CTS Corp. v. E.P.A.*, 759 F.3d 52, 64 (D.C. Cir. 2014) (citations omitted).  "In those situations, resort to extra-record evidence may, for example, help the court to determine whether the administrative record is deficient in the first place." *Id.*; *see also Amfac Resorts*, 143 F. Supp. 2d at 11-12.  Against that standard, Plaintiff fails to demonstrate "how the current record is inadequate to review" Defendants' analysis in the final EIS.  *Cape Hatteras*, 667 F. Supp. 2d at 115.

*First*, Plaintiff's request that the Court consider extra-record documents related to PFAS is based on an inapposite rationale.  Plaintiff alleges those documents are needed to show the impacts of PFAS that have been "found" since the Record of Decision for the final EIS was finalized in 2020, so as to, among other things, illustrate how Defendants have "paint[ed] an

---

[4]      In keeping with this Court's explanation in *Animal Legal Defense Fund,* in *Cape Hatteras* Judge Lamberth explained that "[t]he plaintiffs argue that if their case falls into any one of the eight exceptions identified by the Court of Appeals in [*Esch*], extra-record review is warranted.  The defendants, understandably, argue that the *Esch* exceptions are much narrower than the plaintiffs suggest.  The Court agrees with the defendants that the *Esch* exceptions are not as broad as the plaintiffs, and even some cases from the district court, suggest."  667 F. Supp. 2d at 115.

incomplete picture of the environmental impacts" of the action in the final EIS.  ECF No. 20 at

7-8.  But "even if a party seeks to rely on evidence conflicting directly with an agency decision,

[a court] will not invalidate the decision as arbitrary and capricious based on the evidence if it

'was not in the record at the time' of the decision."  *Butte Cnty., Cal. v. Chaudhuri*, 887 F.3d

501, 506 (D.C. Cir. 2018).

    Plaintiff also proffers several documents to provide more information about PFAS, and to

illustrate the problems with PFAS present in Madison, WI, and in particular in the area

surrounding Truax Field.  *Id.* at 8.  Plaintiff claims the documents are necessary to show the

conclusions in the final EIS were incorrect and that the deployment of F-35As will affect the

environment in a manner more significant than that considered in the final EIS.  But that

justification is insufficient.  In fact, this Court has explained that attempting to submit extra-

record materials because they will "assist the court's review" is "not enough" where "the record

readily permits 'effective review' without adding the requested materials to the record."  *Banner

Health v. Burwell*, 126 F. Supp. 3d 28, 62 (D.D.C. 2015) (aff'd in part, rev'd in part by *Banner

Health v. Price*, 867 F.3d 1323 (D.C. Cir. 2017)).  And here, Plaintiff makes no showing that the

voluminous record certified by Defendants is insufficient or lacking in critical respects such that

the extra-record materials will facilitate the Court's review.

    ***Second***, Plaintiff argues that the Court should consider three documents because they

"relate" to Plaintiff's claims regarding air pollutants and because the record does not contain

documents "showing the health effects of pollutants."  ECF No. 20 at 9.  As an initial matter,

Plaintiff fails to identify how the record is lacking as it relates to the effects of pollutants, or to

specifically describe what gaps the additional materials fill.  Further, Plaintiff does not indicate

that the documents are necessary to make judicial review practicable, or that the record is

otherwise so insufficient as to make resort to extra-record materials necessary; instead, Plaintiff simply argues that consideration of the three documents would aid its claims in this litigation. But simply because materials support a party's position is not reason enough for a court to go outside the administrative record. *See Silver State Land, LLC v. Beaudreau*, 59 F. Supp. 3d 158, 166 (D.D.C. 2014) ("the relevant inquiry here is not what the plaintiff believes the agency should have considered prior to making its decision" because "the issue of what the [agency] should have considered may ultimately bear on whether the agency action at issue was arbitrary and capricious [and] that is a merits argument that is wholly irrelevant to what the agency actually did consider during the time period at issue.") (citations and emphasis omitted).

> **Third**, Plaintiff requests that the Court consider a recent report by the "Intergovernmental Panel on Climate Change." ECF No. 20 at 9. But Plaintiff provides no indication as to why that report is relevant to Defendants' consideration of environmental effects in the final EIS, or that it even specifically relates to the claims in Plaintiff's Complaint. Instead, Plaintiff simply believes the report bears on the issues in this litigation. The Court must, however, determine whether "whether judicial review can be had without the" extra record material. *Cape Hatteras*, 667 F. Supp. 2d 115. Plaintiff makes no case that the Court cannot undertake that review without the additional report.

> **Fourth and finally**, Plaintiff's request that the Court consider three documents that relate to noise caused by F-35As: a report on noise pollution and two studies relating to how noise from F-35As was felt in Vermont. ECF No. 20 at 10. Plaintiff claims each is necessary to show that Defendants' decision was not correct and that the basing of F-35As affects the environment in a significant manner. *Id.* However, "[a]n agency does not 'skew' the administrative record when it does not include agency documents that were not used in making its decision but were

available to commenters." *Theodore Roosevelt*, 616 F.3d at 515.  Plaintiff fails to argue that the

Vermont noise studies were made available to Defendants during the production of the final EIS

but were otherwise ignored, or that Defendants failed to include those studies in the record.

Instead, Plaintiff seems to argue that the record would be more fulsome if it included three

additional studies.  Once again, though, Plaintiff's subjective belief about the thoroughness of the

record is not grounds for introducing extra-record material.  *See Franks v. Salazar*, 751 F. Supp.

2d 62, 69 (D.D.C. 2010) ("Plaintiffs cannot merely assert that the [extra-record] materials were

relevant").

**CONCLUSION**

For the reasons discuss above, the Court should deny Plaintiff's requests to supplement

the administrative record and to submit extra-record materials.


Respectfully submitted this 17th day of September, 2021,

TODD KIM
Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

*/s/ Gregory M. Cumming*
Gregory M. Cumming (D.C. Bar No. 1018173)
Ashley Carter (OR Bar No. 165397)
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
150 M St., N.E.
Washington, D.C. 20002
(202) 598-0414 (phone)
gregory.cumming@usdoj.gov

*Counsel for Defendants*

19
